## STATE OF CONNECTICUT *v.* ATTILA EGED
### (AC 15435)

Foti, Sullivan and Dupont, Js.

Argued January 15—officially released March 31, 1998

*Eugene J. Riccio,* with whom, on the brief, were *Susan Filan* and *Lori A. McCarthy,* law student intern, for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Bruce Hudock,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Attila Eged, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury

to a child in violation of General Statutes § 53-21 (2). On appeal, the defendant claims that the trial court improperly admitted constancy of accusation evidence, and that claim is the sole question of his appeal.

The jury reasonably could have found the following facts. The defendant lived with his wife, son and mother-in-law in an apartment located in the same building as the apartment of the victim's family. The defendant and the victim's father were painters who began working together in 1988. They subsequently became close friends.

In September or October, 1990, when the victim was four years old, she stayed with the defendant in his apartment while her mother, who was then pregnant, went to a physician accompanied by the defendant's wife. The only other person in the apartment at that time was the defendant's mother-in-law, who was then approximately eighty-three years old, in ill health and suffering from bad eyesight. After the victim's mother and the defendant's wife departed, the defendant told the victim to sit down and take her pants off. The victim complied with that request. The defendant then committed an act of cunnilingus on her. This occurred in the living room.

Following that act, the defendant played a videotape that showed a man and a woman committing various sexual acts. The defendant forced the victim to watch the tape. While the videotape was playing, the defendant pulled down his pants and forced the victim to commit an act of fellatio on him. As the victim complied with the order, the defendant's mother-in-law walked past the living room several times on the way to and from the kitchen and her bedroom.

After the victim completed the act of fellatio, the defendant brought the victim into a bedroom and closed the door. The defendant then ordered the victim to lie

on the bed and he attempted to have sexual intercourse with her. The defendant ejaculated twice, once in the bedroom and once in the living room. Subsequently, the victim's mother and the defendant's wife returned to the apartment.

In September, 1991, the victim and her family moved to Florida. Thereafter, they returned to Connecticut to visit the defendant and his family in April, 1992, and again in May or June, 1993. During one of those visits, the victim was a passenger in the backseat of a motor vehicle operated by the defendant. The defendant's wife was a passenger in the front seat. On that occasion, the defendant reached back and placed his hand in the middle of the victim's legs and touched her crotch. The victim attempted to prevent this attack.

In July, 1993, the victim told her parents about the defendant's assaults on her. After the victim's disclosure, she and her family returned to Connecticut in August, 1993, and filed a complaint with the Stamford police department.

The victim, who was nine years old at the time, testified at the trial. In addition, the victim's mother testified. She stated that for several weeks prior to revealing the defendant's assaults, the victim inquired about sexual relations between adults and children. According to the victim's mother, the victim was concerned with whether, in such situations, a child could go to jail. The mother testified that the victim was not exposed to materials from which she could have gained sexual knowledge. She testified further that although the family owned a videocassette recorder in the fall of 1990, the family did not keep pornographic videotapes in the home at any time.

The state also introduced at trial the testimony of Eleanor Shafer, a social worker for the Child Guidance Center in Stamford, with whom the victim met on

August 16, 1993. Shafer testified that she questioned the victim at length about the defendant's actions toward her. The victim's statements to Shafer were not consistent in all respects with her previous statements or with her subsequent trial testimony. The victim on one occasion stated that she committed two acts of fellatio on the defendant, while on another occasion she spoke of only one such act and said one attempt was unsuccessful. She also described the defendant's ejaculation in different terms on separate occasions. Shafer testified that the victim discussed with her why it took so long to tell her mother about the assaults. According to Shafer, the victim told her that she feared being criticized by her mother and making her angry. Shafer also testified that the victim told her that she felt that the sexual assaults were probably her fault.

Dorothy Strudwick, a therapist at Children's Victim Services in Fort Lauderdale, Florida, testified that she met with the victim twenty times. She testified that she counsels children who are suspected of having been sexually abused but that she does not inquire into the specifics of the abuse unless the child first shares his or her thoughts about the abuse. Strudwick testified that on one occasion the victim had a flashback of the defendant exposing himself to her. On another occasion, the victim related to Strudwick the incident that took place in the car. During their meetings, the victim used a workbook to draw pictures of the assaults by the defendant. During Strudwick's testimony, the state introduced three pages of drawings from that workbook depicting some of the events that occurred in the defendant's apartment in the fall of 1990.

The defendant claims that the trial court improperly admitted the constancy of accusation evidence given by the victim's mother, Shafer and Strudwick, and that

such admissions violated the defendant's right to confront his accuser under the sixth and fourteenth amendments to the United States constitution and the constitution of Connecticut, article first, § 8.[1]

The defendant seeks review of this claim under *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989), because no objection was taken at the time the evidence was admitted. *Golding* holds that a defendant can prevail on a claim of constitutional error not preserved at trial only if all the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." *State v. Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986).

The constancy of accusation exception to the hearsay rule has existed in Connecticut since 1830. See *State v. Martin*, 38 Conn. App. 731, 736, 663 A.2d 1078 (1995),

---

[1] "The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jarzbek*, 204 Conn. 683, 707, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988); *State* v. *Reardon*, 172 Conn. 593, 599–600, 376 A.2d 65 (1977). It is expressly protected by the sixth and fourteenth amendments to the United States constitution; *Davis* v. *Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Pointer* v. *Texas*, supra, [403]; and by article first, § 8, of the Connecticut constitution. *State* v. *Torello*, 103 Conn. 511, 513, 131 A. 429 (1925). . . . *State* v. *Cassidy*, 236 Conn. 112, 122, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996)." (Internal quotation marks omitted.) *State* v. *McKnight*, 47 Conn. App. 664, 665 n.1, 706 A.2d 1003 (1998).

cert. denied, 237 Conn. 921, 676 A.2d 1376 (1996). The genesis of the rule is: " 'If a female testifies, that such an outrage has been committed on her person, an enquiry is, at once, suggested, why it was not communicated to her female friends. To satisfy such inquiry, it is reasonable that she should be heard in her declarations, that she did so communicate it, and that testimony should be received to confirm her story.' " Id., quoting *State* v. *De Wolf*, 8 Conn. 93, 100 (1830). Since *De Wolf*, our Supreme Court has consistently approved the admission of such evidence. *State* v. *Martin*, supra, 736. The admissibility of constancy of accusation testimony is evidentiary. *State* v. *Kelley*, 229 Conn. 557, 566, 643 A.2d 854 (1994). In this case, the evidence was admitted pursuant to a firmly rooted exception to the hearsay rule and did not violate the defendant's right of confrontation. Because the defendant's right of confrontation is not involved, there is no constitutional issue to be resolved, and the claim is not reviewable.

In Connecticut, the doctrine of constancy of accusation does not violate an accused's state and federal constitutional rights to confront witnesses. *State* v. *Troupe*, 237 Conn. 284, 293, 677 A.2d 917 (1996) (en banc). The defendant alleges that the constancy of accusation rule should be modified in cases involving young children to include additional requirements and safeguards. We do not agree. The defendant would have the court allow such constancy of accusation evidence only if (1) the defendant asserts that the victim was not sexually assaulted, (2) the complaint is made within a reasonable time after the alleged assault, or, if the complaint is not made within a reasonable time, an explanation for the delay is given, (3) the victim's complaint is voluntarily made, (4) the testimony is restricted to the facts of the complaint, and (5) the trial judge determines that the probative value of the evidence outweighs the potential prejudices to the defendant.

See *State* v. *Troupe*, supra, 320 (*Berdon, J.*, concurring). In *Troupe*, our Supreme Court narrowed the limits of the constancy of accusation rule after a thorough and comprehensive review of that doctrine.

The law now is that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant. In addition, the defendant is entitled to an instruction that any delay by the victim in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony." Id., 304–305.

The *Troupe* court further stated that the principle of law set out in that case would apply only to those cases in which constancy of accusation testimony had not yet been admitted into evidence on the date of the publication of that opinion. Id., 305. In this case, the jury returned its verdict and judgment was rendered prior to the decision in *Troupe*. Thus, this case is governed by the law set forth in the line of cases commencing with *State* v. *Kinney*, 44 Conn. 153 (1876). Those cases allow the state "to introduce the fact of the complaint and the details of the complaint once the victim

has testified regarding the alleged sexual assault and the identity of the person or persons to whom a complaint had been made. Subject to a determination by the trial court that the proffered evidence is more probative than prejudicial, the state may introduce the constancy of accusation testimony of each of the persons to whom the complainant had reported the sexual assault." *State* v. *Troupe*, supra, 237 Conn. 297–98.

The judgment is affirmed.

In this opinion the other judges concurred.