## STATE OF CONNECTICUT *v.* GEORGE HAWKINS
### (AC 16905)

Schaller, Sullivan and Dupont, Js.

Submitted on briefs September 24—officially released December 15, 1998

*Avery S. Chapman* filed a brief for the appellant (defendant).

*Eileen McCarthy Geel,* deputy assistant state's attorney, and *Cara Eschuk,* assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

DUPONT, J. The defendant, George Hawkins, appeals from the judgments of conviction, rendered after a jury trial, of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2), and three counts of risk of injury to a child in violation of General Statutes § 53-21, one count for events that occurred on August 22, 1995, and two counts for events that occurred prior to or on June 23, 1995. The defendant claims that the trial court improperly (1) admitted constancy of accusation evidence, (2) instructed the jury regarding the use of that evidence and (3) denied the defendant's motion for a new trial. We affirm the judgments of the trial court.

The jury reasonably could have found the facts that follow. The defendant was charged under two separate informations with sexual assault and risk of injury to a child after an investigation indicated that the defendant had engaged in sexual acts with the victim, his sister, between 1992 and 1995.[1] The victim was twelve years

---

[1] The defendant was charged under two separate informations, one bearing docket number CR-95-4241681 for events that occurred prior to or on June 23, 1995, and the other bearing docket number CR-95-4240679 for events that occurred on August 22, 1995. The state's motion for joinder was granted by the trial court, *Damiani, J.,* on August 14, 1996, and the cases were tried together.

old when the sexual assaults began and it was not until June, 1995, when she was fifteen years old, that the victim first made the allegations of sexual abuse that ultimately led to the charges against the defendant.

The victim testified that the sexual assaults occurred on various dates when the defendant was home weekends visiting his family.[2] Specifically, on June 23, 1995, after informing her aunt and a social worker that she was being sexually assaulted by her brother and that the most recent incident had occurred at 5 o'clock that morning, the victim was taken to St. Mary's Hospital in Waterbury, where she was examined by a physician and evaluated by an investigator for the department of children and families (department) and a social worker. While at the hospital, the victim was also interviewed by a police detective, who took a written statement from the victim concerning the incident.

The victim also testified to an incident that occurred on August 22, 1995. On that day, the victim, who was then living with her aunt, made a brief visit to her mother's house to shower and change clothes. According to the victim, while she was showering, the defendant entered the bathroom and ordered her to perform sexual acts with him. After the assault, the victim showered, dressed and told her mother what had happened. The victim's mother took her to St. Mary's Hospital, where she was again examined by a physician, and evaluated by a social worker and a department investigator. The victim also notified the police, who subsequently arrested the defendant.

---

[2] At the time of the incidents, the defendant was serving a five year sentence imposed on him in August, 1990, for an unrelated crime. The defendant was permitted to return to his mother's home for weekend furloughs before his final release. At trial, the state and defense counsel stipulated that the defendant was home on specific dates between 1992 and 1995.

The state offered the testimony of several constancy of accusation witnesses to support the victim's testimony.[3] After each witness testified, the trial court instructed the jury that the testimony of these witnesses included constancy of accusation evidence, that such evidence could be used only to corroborate the victim's testimony and that it was not being offered to prove that the incidents had actually occurred.[4] Defense counsel did not object to the trial court's instruction as to the testimony of those witnesses, and the constancy of accusation evidence is not the subject of this appeal.

The crux of the defendant's claim concerns the admission into evidence by the trial court of the state's exhibit eleven, a twelve page hospital report made during the course of the victim's treatment at St. Mary's Hospital on August 22, 1995. The report includes the social worker's notes concerning the victim's medical and family history, the condition of the victim at the time of her hospital visit, statements made by the victim to her physician, the status and results of examinations performed, and statements made by the victim's mother.

The report states in relevant part: "I met [with] patient's mom during patient's exam yesterday. She is a [forty-seven] year old woman. Mother provided some background history. She first learned of patient's sexual

[3] These witnesses included the victim's boyfriend, two department investigators, the victim's aunt, a police detective and a domestic violence counselor.

[4] For example, after the victim's boyfriend testified, the trial court gave the jury the following instruction: "Two things, ladies and gentlemen. The first is that the last witness you just heard under our law testified under a doctrine known as constancy of accusation. This allows a person to come into court and repeat what someone else has said to them, not for establishing the truth of what was said, but to establish that it was said, the credibility of the person who's already testified here, [the victim]. So, you don't evaluate what was said there as evidence of any offense, but it deals with the credibility issue of [the victim]. That's why it was offered to you." Similar instructions were given to the jury after each constancy of accusation witness testified and in the trial court's jury charge.

abuse/assault by her oldest son George on [June 23, 1995] when patient disclosed assault to a maternal aunt. That disclosure led to [St. Mary's Hospital emergency room] visit and [a department] referral was generated. Per mom's report, since that time, her son George has never been picked up by the police, and [the victim] was the one out of the home. Mom indicated that [the victim] has been [at two maternal] aunts in [Waterbury and New Haven] since June and came home yesterday to drop off new clothes for school. [The victim] was assaulted in the shower by her brother while mom was outside in the yard. Mom stated she made multiple calls to the police after the first incident, but was told the prosecutor would not sign a warrant for [first degree] sexual assault. Mother was relieved her son was arrested yesterday when informed by [the police]. Mom was able to verbalize that [the victim] has been through a great deal, she cited the sexual assaults, the incarceration of her father, parents are divorced and her own two years of chronic illness as stressors."

I

The defendant first claims that the trial court improperly admitted the state's exhibit eleven as a full exhibit for the jury's consideration under the constancy of accusation doctrine in violation of the defendant's rights to confrontation under the federal and state constitutions. We disagree.

The following additional facts are relevant to our resolution of this claim. On the day she was scheduled to testify, the victim's mother became ill at the courthouse and was taken to a hospital. She was ill for the remainder of the trial and was unable to testify. Thus, the trial court granted the state's motion for permission to have her testimony from another proceeding read to the jury. In that proceeding, the victim's mother had

testified about the incident on August 22, 1995, and the subsequent visit to the hospital.

The defendant claims that because the victim's mother did not testify at the trial, he was unable to cross-examine her as to the statements made by her in the social worker's notes in exhibit eleven. The defendant claims that the statements by the victim's mother in the report were hearsay, that the report was improperly admitted under the constancy of accusation exception to the hearsay rule and that his right to confrontation was violated because he was unable to cross-examine the victim's mother as to such evidence.[5] The defendant cites *California* v. *Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970), in which the court held that the right of confrontation of witnesses was not violated by constancy of accusation evidence "*as long as* the declarant is testifying as a witness and subject to full and effective cross-examination." (Emphasis added.)

---

[5] We note that the statements of the victim's mother contained in the report may not constitute constancy of accusation evidence. The statements do not relate to the victim's statements to her mother that the defendant had sexually assaulted her. Rather, the statements were made by the mother to a social worker to provide background information about the victim generally. The report consists of notations by the social worker regarding the mother's reactions to the sexual assaults and the arrest of her son. The statements were not offered to corroborate the victim's prior testimony, and the record demonstrates that the report was not considered constancy of accusation evidence by the court, as shown by the fact that limiting instructions were given by the court after each constancy of accusation witness testified, while no such instruction was given or requested by the defendant after the introduction of exhibit eleven. We need not decide, however, the issue of whether exhibit eleven constitutes constancy of accusation evidence or whether it qualifies under another exception to the hearsay doctrine because under either circumstance, the ruling as to its admission is evidentiary; see *State* v. *Eged*, 48 Conn. App. 283, 288, 709 A.2d 39 (1998); and, accordingly, the defendant's unpreserved claim fails the second prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see also *State* v. *Hansen*, 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995) (" '[e]videntiary claims are not of constitutional magnitude and are thus not entitled to *Golding* review' ").

The defendant did not object to the state's introduction of exhibit eleven at trial[6] and, therefore, did not preserve his claim. "It is well established that generally this court will not review claims that were not properly preserved in the trial court. . . . A defendant may prevail on a claim of constitutional error not preserved at trial, however, if the defendant satisfies the four part standard set forth in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989)."[7] (Citations omitted.) *State* v. *Jones,* 50 Conn. App. 338, 346–47, 718 A.2d 470 (1998).

"The constancy of accusation doctrine is well established in Connecticut and recently has been reaffirmed by [our Supreme] court. See *State* v. *Troupe,* 237 Conn. 284, 297–98, 303–304, 677 A.2d 917 (1996) . . . ." (Citations omitted.) *State* v. *Sullivan,* 244 Conn. 640, 645, 712 A.2d 919 (1998). "From its inception, the underlying purpose of the doctrine has been to combat prejudiced notions about the credibility of sexual assault victims by allowing the state to demonstrate that the victim had

---

[6] The defendant states in his brief that exhibit eleven was introduced over counsel's objections. The record, however, does not support the defendant's claim. In fact, the transcript reveals that when the state offered the report as a full exhibit into evidence, defense counsel replied, "We're not objecting, Your Honor." The transcript section cited by the defendant does not relate to exhibit eleven.

[7] "Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. [*State* v. *Golding,* supra, 213 Conn. 239–40.] *State* v. *Graham,* 33 Conn. App. 432, 441–42, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Newton,* 8 Conn. App. 528, 531, 513 A.2d 1261 (1986) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Otero,* 49 Conn. App. 459, 463 n.6, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998). If there is no constitutional claim, the claim is not reviewable.

reported the assault to persons in whom she naturally would confide." *State* v. *Marshall*, 246 Conn. 799, 809–10, 717 A.2d 1224 (1998). In *State* v. *Troupe*, supra, 284, our Supreme Court "restricted the doctrine so that a constancy of accusation witness could testify only to the fact and the timing of the victim's complaint. Even so limited, the evidence would be admissible solely for corroboration of the victim's testimony, and not for substantive purposes." *State* v. *Sullivan*, supra, 645.

"In Connecticut, [however,] the doctrine of constancy of accusation does not violate an accused's state and federal constitutional rights to confront witnesses. *State* v. *Troupe*, [supra, 237 Conn. 293]." *State* v. *Eged*, 48 Conn. App. 283, 288, 709 A.2d 39 (1998); see also *State* v. *Lindstrom*, 46 Conn. App. 810, 816, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997) ("[o]ur Supreme Court has held that the constancy of accusation doctrine does not violate the right to confrontation"); *State* v. *Jones*, 44 Conn. App. 476, 487, 691 A.2d 14, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997) (evidentiary claims not of constitutional magnitude and therefore not entitled to *Golding* review). Accordingly, the defendant's claim fails the second prong of *Golding*.

Even if we were to review the defendant's claim, not as one involving constancy of accusation, but as an alleged constitutional violation because the defendant's federal and state constitutional rights to confrontation were allegedly violated due to his inability to cross-examine the victim's mother,[8] we nevertheless conclude

---

[8] In *State* v. *Sullivan*, supra, 244 Conn. 645–46, our Supreme Court recently stated that "[n]otwithstanding our decision in *Troupe*, we recognize that the constancy of accusation doctrine creates a tension between competing well recognized principles. It remains a powerful weapon in the state's arsenal to secure justice for victims of sexual assaults. It also, however, constitutes a potential threat to the accused's right of confrontation under the sixth amendment to the constitution of the United States and under article first, § 8, of the constitution of Connecticut. To resolve this tension, the defendant must be allowed an adequate opportunity to cross-examine

that the defendant cannot prevail under the third prong of *Golding* because he has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

In his closing argument, the defendant utilized portions of the same social worker's notes contained in exhibit eleven, the admission of which he now claims was improper. Specifically, the defendant referred to the victim's mother's statement that the victim "has been through a great deal, she cited the sexual assaults, the incarceration of her father, parents are divorced and her own two years of chronic illness as stressors" to support his argument that the victim fabricated her claims. Despite the use of some of the statements of the victim's mother in closing argument, the defendant argues that the statements by the victim's mother in the report should not have been presented to the jury because they related to the defendant's guilt and to the victim's mother's state of mind. Having used some of this evidence to his advantage in his closing argument, the defendant cannot now establish that any alleged improper evidentiary ruling as to the admission of the report clearly existed or deprived him of a fair trial. See generally *State* v. *Beliveau*, 237 Conn. 576, 594, 678 A.2d 924 (1996); *State* v. *Bowman*, 46 Conn. App. 131, 137–38 n.4, 698 A.2d 908 (1997); *State* v. *Hansen*, 39 Conn. App. 384, 394, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).[9]

constancy of accusation witnesses. Such cross-examination properly includes questioning the witness not only about the victim's report of the present charge, but also about the victim's prior false statements, to that witness, that tend to undermine the credibility of the victim's present complaint." See also *State* v. *Kelley*, 229 Conn. 557, 566, 643 A.2d 854 (1994) (holding that because the defendant could cross-examine both the victim and the constancy of accusation witness, his right to confrontation had not been violated).

[9] We note that the defendant has not claimed that the trial court improperly admitted another hospital report made during the course of the victim's treatment at St. Mary's Hospital on June 23, 1995, in which the social worker

Furthermore, the defendant's claim that the admission of the report improperly influenced the jury is without merit. There was ample evidence before the jury to sustain the verdict. We cannot speculate, as the defendant would have us do, as to how and why the jury arrived at its verdict. See *State* v. *Chapman*, 33 Conn. App. 205, 212, 635 A.2d 290 (1993), cert. denied, 228 Conn. 920, 636 A.2d 851 (1994). Additionally, the jury, during deliberations, specifically questioned the trial court as to the use of the victim's mother's statements in the challenged report. The trial court gave a full supplemental instruction as to the appropriate use of that evidence, and the defendant neither objected nor requested a further limiting instruction.[10]

We also conclude that the defendant is not entitled to plain error review of his claim. "Generally, where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. . . . To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Lindstrom*, supra, 46 Conn. App. 817. We decline to review this claim under the plain error doctrine because we find that the admission of exhibit eleven did not affect the fairness or integrity of the proceedings, nor did it result in manifest injustice to the defendant.

noted that the victim's mother "states she was unaware of the abuse, and strongly stated her desire to protect patient and to remove perpetrator from her home."

[10] The supplemental instruction is discussed more fully in part II of this opinion.

## II

The defendant next claims that the trial court improperly instructed the jury as to the use of the statements made by the victim's mother in exhibit eleven. We disagree.

Certain additional facts are necessary to our resolution of this issue. On September 20, 1996, the trial court charged the jury and deliberations began. On September 23, 1996, the next day of deliberations, the jury requested that the victim's testimony be played back. On September 25, 1996, the jury submitted another question to the trial court. The trial court stated the question as follows: "As I understand the question, since these comments made in [the state's exhibit eleven] are made by the social worker regarding [the victim's] mother's thoughts and feelings, can these perceptions be considered as [the victim's] mother's testimony?"

In response, the trial court instructed the jury that "the comments that were made by the social worker regarding [the victim's] mother's statements and so forth are evidence before you. They are not testimony because the mother didn't sit here in a courtroom under oath and be sworn and be cross-examined. So, it's not testimony, but it is evidence. [The report] is a full exhibit and it [is] evidence, and the weight you give to that evidence is what you decide. I don't know if that's helpful or not, but it is evidence, that's why you have it there. Everything you have in there is evidence. It is not testimony because testimony comes when it is sworn. When social workers do these things, they don't put people under oath and there's no lawyers there. So you can consider this as evidence, as you do every other piece of evidence that you had or listened to. If that doesn't do the trick for you, you can send another note out."

The defendant did not object to the supplemental instruction, and the jury submitted no further questions to the trial court. The defendant now claims that the instruction was insufficient in explaining the proper use of the information in exhibit eleven and that "the jury did in fact misunderstand or disregard the limited use instruction as to the constancy of accusation purpose of the exhibit was introduced, and [the defendant] was therefore denied a fair trial." We decline to review the defendant's claim because his claim of instructional impropriety is not one of constitutional magnitude and, therefore, the defendant has failed to meet the second prong of the *Golding* test.

"Our Supreme Court has stated that [j]ust as every claim of evidentiary error by the trial court is not truly constitutional in nature; see e.g., [*State* v. *Golding*, supra, 213 Conn. 241]; every claim of instructional error is not truly constitutional in nature. . . . Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right. *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993). *State* v. *Dash*, [242 Conn. 143, 151–52, 698 A.2d 297 (1997)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Bond*, 49 Conn. App. 183, 192, 713 A.2d 906, cert. denied, 247 Conn. 915, 722 A.2d 808 (1998); see *State* v. *Hines*, 243 Conn. 796, 817, 709 A.2d 522 (1998); *State* v. *Rodriguez*, 49 Conn. App. 606, 616, 716 A.2d 914, cert. denied, 247 Conn. 925, 719 A.2d 1171 (1998).

In *State* v. *Wild*, 43 Conn. App. 458, 466–67, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996), the defendant claimed that the trial court's failure to give limiting jury instructions at the time the constancy of accusation witnesses testified violated his constitutional rights to due process and a fair trial. We stated,

however, that "[w]e have previously held that the failure of the trial court to give a limiting instruction concerning the use of evidence . . . is not a matter of constitutional magnitude. . . . Absent a claim of constitutional magnitude, the defendant's unpreserved claim fails to satisfy the second prong of *Golding* and is, therefore, not reviewable. . . . *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996)." (Internal quotation marks omitted.) *State* v. *Wild*, supra, 467.

Here, the defendant's conclusory statements that the jury misunderstood the instruction and that he was denied a fair trial are insufficient to transform his claim into one of constitutional magnitude that warrants review under *Golding*. Therefore, we decline to review this unpreserved claim of instructional error. We also conclude that the trial court's instruction did not constitute plain error because it did not affect the fairness and integrity of and public confidence in the judicial proceedings. See *State* v. *Rodriguez*, supra, 49 Conn. App. 617.

## III

The defendant's final claim is that the trial court improperly denied his motion for a new trial.[11] We disagree.

" '[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination

---

[11] The defendant moved for a new trial pursuant to Practice Book § 902, now § 42-53. Section 42-53 (a) provides in relevant part: "Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his or her asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him or her." All of the claims raised by the defendant in his

of whether, by such denial, the court abused its discretion. *State* v. *Rothenberg*, 195 Conn. 253, 264, 487 A.2d 545 (1985).' *State* v. *Leavitt*, 8 Conn. App. 517, 524, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986). As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." *Munson* v. *United Technologies Corp.*, 28 Conn. App. 184, 194–95, 609 A.2d 1066 (1992).

The state argues that exhibit eleven was not constancy of accusation evidence and that even if it was, the defendant's failure to object to its admission amounted to noncompliance with the rules of practice that precludes the defendant from asserting a claim for a new trial pursuant to Practice Book § 42-53. The state also argues that the defendant has failed to raise a claim of constitutional magnitude or to demonstrate that the admission of exhibit eleven materially injured him. We agree.

We conclude, in light of our decision as to the defendant's other claims and assuming that the defendant is not precluded from raising a claim for a new trial under Practice Book § 42-53, that the defendant has not met his burden of proving material injury or a constitutional error that would entitle him to a new trial. The trial court did not abuse its wide discretion in denying the defendant's motion for a new trial.

The judgments are affirmed.

In this opinion the other judges concurred.

---

motion for a new trial related to the admission of exhibit eleven and the alleged improper admission of constancy of accusation evidence.